IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BATTLE CREEK HEALTH SYSTEM )<br>300 North Avenue )<br>Battle Creek, MI  49017 )<br> )<br>CHELSEA COMMUNITY HOSPITAL )<br>775 South Main Street )<br>Chelsea, MI  48118 )<br> )<br>HOLY CROSS HOSPITAL )<br>1500 Forest Glen Road )<br>Silver Spring, MD  20910 )<br> )<br>MERCY GENERAL HEALTH PARTNERS- )<br>MERCY CAMPUS )<br>1500 East Sherman Boulevard )<br>Muskegon, MI  49444 )<br> )<br>MERCY HOSPITAL CADILLAC )<br>400 Hobart Street )<br>Cadillac, MI  49601 )<br> )<br>MERCY HOSPITAL GRAYLING )<br>1100 East Michigan Avenue )<br>Grayling, MI  49738 )<br> )<br>MERCY MEDICAL CENTER DUBUQUE )<br>250 Mercy Drive )<br>Dubuque, IA  52001 )<br> )<br>MERCY MEDICAL CENTER MASON CITY )<br>1000 4th Street Southwest )<br>Mason City, IA  50401 )<br> )<br>MERCY MEDICAL CENTER SIOUX CITY )<br>801 5th Street )<br>Sioux City, IA  51101 )<br> )<br>MOUNT CARMEL NEW ALBANY )<br>SURGICAL HOSPITAL )<br>7333 Smith's Mill Road )<br>New Albany, OH  43054 )<br> ) | Cause No. 1:17-cv-545 |

MOUNT CARMEL SAINT ANN'S )
500 South Cleveland Avenue )
Westerville, OH 43081 )
)
SAINT ALPHONSUS RMC )
1055 North Curtis Road )
Boise, ID 83706 )
)
SAINT JOSEPH MERCY HOSPITAL )
5301 McAuley Drive )
Ypsilanti, MI 48197 )
)
SAINT JOSEPH MERCY LIVINGSTON )
HOSPITAL )
620 Byron Road )
Howell, MI 48843 )
)
SAINT JOSEPH MERCY PORT HURON )
2601 Electric Avenue )
Port Huron, MI 48060 )
)
SAINT JOSEPH MERCY SALINE HOSPITAL )
400 Russell Street )
Saline, MI 48176 )
)
SAINT JOSEPH REGIONAL MEDICAL )
CENTER MISHAWAKA )
5215 Holy Cross Parkway )
Mishawaka, IN 46545 )
)
SAINT JOSEPH REGIONAL MEDICAL )
CENTER PLYMOUTH )
1915 Lake Avenue )
Plymouth, IN 46563 )
)
MISHAWAKA MEDICAL CENTER )
5215 Holy Cross Parkway )
Mishawaka, IN 46545 )
)
SAINT MARY MERCY HOSPITAL )
36475 Five Mile Road )
Livonia, MI 48154 )
)
      Plaintiffs, )
  v. )
)

2

| | |
|---|---|
| THOMAS E. PRICE, | ) |
| Secretary of the United States | ) |
| Department of Health and Human Services, | ) |
| Room 700-E | ) |
| 200 Independence Avenue, S.W. | ) |
| Washington, D.C. 20201 | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR JUDICIAL REVIEW OF ADMINISTRATIVE DISMISSAL OF MEDICARE REIMBURSEMENT APPEAL**

The Plaintiffs, by counsel, for their complaint against Defendant, Thomas E. Price, Secretary of the Department of Health and Human Services, allege and state the following:

**THE PARTIES AND RELEVANT AGENCIES**

1. Plaintiffs are not-for-profit hospitals providing services certified under the Medicare program, and at all relevant times, the Hospitals were providers under Title XVIII of the Social Security Act, 42 U.S.C. 1395 *et seq*., ("Medicare Act").

2. The Defendant, Thomas E. Price, is Secretary of the United States Department of Health and Human Services ("Secretary"), which is the governmental agency responsible for the Medicare program.

3. The Centers for Medicare and Medicaid Services ("CMS") administers the Medicare program by delegation from, and as agent of, the Secretary.

4. The Medicare Administrative Contractor ("MAC") is an organization that administers the Medicare program in a given area under contract with CMS pursuant to 42 U.S.C. § 1395h. For the Medicare appeal at issue, the MAC designated as the CMS representative in this case was Wisconsin Physicians Service.

5. The Provider Reimbursement Review Board ("PRRB") is an agency of the United States Department of Health and Human Services and acts as an administrative hearing body for

3

Medicare reimbursement disputes between providers of Medicare services and Medicare Administrative Contractors pursuant to 42 U.S.C. § 1395oo.

## JURISDICTION AND VENUE

6.     This action arises out of the PRRB's own motion review dismissal on jurisdictional grounds of a Medicare reimbursement dispute between the Plaintiff and the MAC and CMS.  The jurisdiction of this Court is founded upon 42 U.S.C. § 1395oo(f)(1); 28 U.S.C. § 1331, and 28 U.S.C. § 1361.

7.     Venue lies in the United States District Court for the District of Columbia pursuant to 42 U.S.C. § 1395oo(f)(1).

## THE DISPROPORTIONATE SHARE HOSPITAL PROGRAM

8.     Congress has mandated that CMS pay hospitals on a prospective basis for inpatient services provided to Medicare beneficiaries.  *See generally* 42 U.S.C. § 1395ww(d).  Under this prospective payment system, hospitals are reimbursed for inpatient services based on the discharge diagnosis of the patient as coded into Diagnostic Related Groups (DRGs) established by CMS under the Medicare program.

9.     Congress has also mandated an adjustment in prospective payments for hospitals that serve a disproportionate number of low income patients.  42 U.S.C. § 1395ww(d)(5)(F).  This program is commonly called the "Disproportionate Share Hospital" ("DSH") program.  The overriding intent of Congress in establishing the DSH program was to supplement the prospective payments of hospitals serving low-income persons."   *Alhambra Hospital v. Thompson*, 259 F.3d 1071, 1075-1076 (9th Cir. 2001) (quoting *Legacy Emmanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d. 1261, 1265 (9th Cir. 1996) (quoting *Jewish Hosp., Inc. v. Secretary of Health & Human Servs.*, 19 F.3d 270, 272 (6th Cir. 1994)

4

10. This court has long recognized that the Defendant has failed to implement the DSH program as mandated by Congress. In fact, in response to the Defendant's steadfast refusal to implement the DSH program this court used its mandamus power to order the Defendant to do so. *Samaritan Health Ctr. v. Heckler,* 636 F. Supp. 503 (D.D.C. 1985). The Defendant's resistance to complying with the Congressional mandate and order of this Court subsequently led this Court to strongly consider a contempt finding against the Defendant. *See Samaritan Health Ctr. v. Bowen*, 646 F. Supp. 343, 345 – 47 (D.D.C. 1986).

11. Court recognition of the Secretary's hostility to the DSH program continued as a series of Circuit Court decisions repudiated the Defendant's refusal to count "Medicaid eligible days" as mandated by 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). *See Jewish Hosp., Inc. v. Secretary of Health & Human Servs.*, 19 F.3d 270, 276 (6th Cir. 1994) (noting "credible and compelling" evidence that the Defendant was "hostile to the concept of the disproportionate share adjustment" and suggesting that the Secretary "apparently intended to impede the implementation of the PPS framework"); *Cabell Huntington Hosp. v. Shalala*, 101 F.3d. 984, 990 (4th Cir. 1996) (condemning the Defendant's approach as an attempt to "rewrite the will of Congress" and accusing the agency of being "hostile from the start to the very idea of making the [DSH] payments at issue"); *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996); *Legacy Emmanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d. 1261 (9th Cir. 1996).

12. Courts have continued to recognize the Defendant's hostility and unreasonable handling of DSH issues in the new millennium. *Clark Reg'l Med. Ctr. v. United States Dep't of Human Servs.*, 314 F.3d 241, 249 (6th Cir. 2002) (noting the "Department's history of hostility to the concept of DSH adjustment" and admonishing the Defendant for trying to "simply interpret the [DSH] regulation so as to always disadvantage the subject hospitals"); *Portland Adventist*

*Med Ctr. v. Thompson*, 399 F.3d 1091, 1099 (9th Cir. 2005) (finding that "this appears to be the latest in a series of cases in which the Secretary has refused to implement the DSH provision in conformity with the intent behind the statute"); *Alhambra Hospital v. Thompson*, 259 F.3d 1071, 1076 (note 4) (9th Cir. 2001) (favorably quoting from *Jewish Hospital* in regards to the "credible and convincing evidence of Secretarial hostility to the concept of disproportionate share adjustment").

## DETERMINATION OF DHS ELIGIBILITY AND PAYMENT

13. To be eligible for DSH payment hospitals, in most cases, must meet a "disproportionate patient percentage" as defined by the Medicare statute. 42 U.S.C. § 1395ww(d)(5)(F)(v).

14. The "disproportionate patient percentage" is determined by summing two statutorily defined fractions commonly called the "Medicare Fraction" and the "Medicaid Fraction."

15. The "Medicaid Fraction" (expressed as a percentage) comprises a numerator which is the total inpatient days for a cost reporting period attributable to patients "eligible for assistance" under a State Medicaid plan during their inpatient care, divided by a denominator which is the total number of hospital inpatient days for the relevant cost reporting period. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The Plaintiffs' Medicaid Fraction is not in dispute in this case.

16. The Medicare Fraction (also expressed as a percentage) comprises a numerator which is the number of inpatient days made up of patients who were entitled to benefits under Part A of the Medicare statute and were entitled to supplemental security benefits (SSI) under the Social Security Act ("SSI Days"), divided by a denominator that is the total number of inpatient

hospitals days for patients eligible for benefits under Medicare Part A.  42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

17.     The substantive dispute in the Plaintiffs' initial appeal to the PRRB centers on the numerator of the Medicare Fraction, and in particular, the determination of "SSI Days" as defined above.  The Hospital Plaintiffs assert that the Defendant has provided figures for SSI Days that are inaccurate and understate the numerator of Medicare Fraction thereby decreasing Plaintiffs' reimbursement under the DSH program.  Plaintiffs assert the SSI Days were understated because CMS did not include Medicare Advantage Days (a Medicare benefit modeled as a managed care program) in the SSI Days determination.

18.     Unlike other variables in the DSH formula, hospitals do not determine their SSI Days for purposes of inclusion in the numerator of the Medicare Fraction.  Rather, CMS determines the number of SSI days and hospitals are required to use the CMS number when completing their cost reports.  42 C.F.R. § 412.106(b).

19.     For this appeal, CMS published the SSI data that Plaintiff hospitals were required to use on the CMS website on June 24, 2009.

## THE PRRB'S DISMISSAL OF THIS APPEAL

20.     Hospitals have "180 days after notice of the Secretary's final determination," for such an issue, to file and administrative appeal with the PRRB.  42 U.S.C. § 1395oo(a)(3).

21.     The plaintiffs, through counsel, timely filed this appeal on December 24, 2009, within 180 days of the Secretary's June 24, 2009 determination and publication of the SSI data that plaintiffs were by regulation required to use.

22.     Pursuant to CMS regulations and PRRB rules, CMS is not directly a party to the PRRB appeal but is represented by its agent the MAC. 42 C.F.R. § 405.1843(b). Thus, the MAC is the adverse party to the Plaintiff Hospitals while the appeal is pending before the PRRB.

23.     PRRB rules require that the MAC file a letter within 30 days of the appeal filing with the PRRB advising the Board as to any challenges to Board jurisdiction over the appeal. PRRB Rules, Rule 10.

24.     For nearly six years the PRRB appeared to accept jurisdiction in the case without question. No notice was ever sent to the Plaintiffs' counsel suggesting any jurisdictional concern.

25.     During these intervening six years the Plaintiff Hospitals submitted their cost reports to the MAC and CMS for their cost reporting years relevant to Federal Fiscal Year 2008. Hospitals are annually required to file a "cost report" with the Medicare program itemizing various program recognized costs incurred by the hospital. Cost reports also include contributions of items related to determining DSH payment for hospitals, but as discussed above, the hospital is required to use the number provided by CMS for the SSI component.

26.     The MAC audits the hospital's cost report and then issues a Notice of Program Reimbursement ("NPR") for that cost reporting year providing the total payment permitted the hospital for that period.

27.     The NPR is also a final determination from which hospitals may appeal contested issues to the PRRB if filed within 180 days of the NPR. Had the Plaintiffs been aware of the concern related to jurisdiction that prompted the PRRB to eventually dismiss the case, the Plaintiffs could have resolved any jurisdictional question simply by filing appeals for the Plaintiff Hospitals within 180 days of each hospital's relevant NPR.

28.     During the nearly four years that the Board sat on this matter, the relevant cost reports for the Plaintiffs were audited by the MAC, the NPRs issued and the 180 day statutory time period to file appeals from the issuance of the NPR expired.

29.     With no prior notice to Plaintiffs' counsel, on January 26, 2017 the PRRB sent to plaintiffs' counsel its own motion decision dismissing Plaintiffs' appeal.  The PRRB claimed the June 24, 2009 publication of the SSI data that the Plaintiffs were by regulation required to use was not a "final determination" triggering appeal rights.  Thus, the issue the PRRB claimed as basis for the jurisdictional infirmity existed from the moment the appeal was filed in December 2009.

30.     The PRRB deviated from its customary practice of first notifying counsel representing hospitals of a potential own motion jurisdictional issue and providing the Hospitals opportunity to comment on the issue to the Board.

## STATEMENT OF AGENCY ERRORS

31.     The decision of the PRRB to dismiss Plaintiffs' case was arbitrary and capricious and not in accord with the law.

32.     The failure of the PRRB to provide notice that a jurisdictional issue might exist, and its failure to allow the Hospitals an opportunity to present comment and argument as to why valid jurisdiction existed, was arbitrary, capricious and violated the Administrative Procedures Act (*see* 5 U.S.C. § 554)  and due process of law.

33.     The failure of the PRRB to timely consider the jurisdictional matter, delaying its decision until after alternative appeal routes had expired, was arbitrary, capricious, not in accord with the law, contrary to fundamental principles of equity and violated due process.

WHEREFORE, the Plaintiffs, pray as follows:

A. For an Opinion and Order of the Court finding that the PRRB erred in dismissing the Plaintiffs' appeal.

B. For an Opinion and Order reinstating the Plaintiffs' appeal with the PRRB.

C. For all costs and attorney fees.

D. For any and all other relief to which Plaintiffs are entitled.

Respectfully submitted,

HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

  /s/ N. Kent Smith
N. Kent Smith, Attorney No. 1777-49
500 North Meridian Street, Suite 400
Indianapolis, IN  46204-1293
Ph:  (317) 633-4884
Fax: (317) 633-4878
Email:  ksmith@hallrender.com
*Attorneys for Plaintiffs*

4848-5338-8613, v. 1